UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| BRITTANY NICOLE MCCULOUGH, | ) | |
|---|---|---|
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00202-SKL |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Brittany McCullough ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB"). Each party has moved for judgment [Doc. 17 & Doc. 23] and filed supporting briefs [Doc. 18 & Doc. 24]. Plaintiff also filed a response to the Commissioner's motion [Doc. 25]. For the reasons stated below: (1) Plaintiff's motion for summary judgment [Doc. 17] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 23] will be **GRANTED**; and (3) the decision of the Commissioner will be **AFFIRMED**.

I.    ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 14 ("Tr.")], Plaintiff filed her application for DIB on December 19, 2017, alleging disability beginning October 21, 2017. Plaintiff's claims were denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on October 23, 2019, in Kingsport, Tennessee. On December 18, 2019, the ALJ found Plaintiff was not under a disability as defined

in the Social Security Act at any time from the alleged onset date through the date of the ALJ's decision.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II.     FACTUAL BACKGROUND

### A.     Education and Employment Background

Plaintiff was born October 18, 1990, making her 27 years old on the alleged onset date, which is considered a "younger person." 20 C.F.R. § 404.1563(e). She is able to communicate in English. She has past relevant work as a customer account clerk, which is considered a skilled occupation that is performed at the sedentary exertional level. She also has past relevant work as an inspector, a stock clerk, and a doffer, all of which are considered unskilled occupations, and which range from light to heavy exertional levels, as generally and/or actually performed.

### B.     Medical Records

In her January 2018 Disability Report, Plaintiff alleged disability due to bipolar disorder, ADHD, depression, anxiety, and PTSD (Tr. 231). While there is no need to summarize all of the medical records herein, the relevant records have been reviewed.

### C.     Hearing Testimony

At the hearing before the ALJ on October 23, 2019, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel at the hearing. The Court has carefully reviewed the transcript of the hearing (Tr. 33-60).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of their impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

## B. The ALJ's Findings

The ALJ found Plaintiff meets the insured status requirements through December 31, 2023. At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability date, October 21, 2017. At step two, the ALJ found Plaintiff had the following severe impairments: (1) obesity, (2) plantar fasciitis, (3) affective disorder, (4) anxiety disorder, (5) sleep disorder, and (6) PTSD. The ALJ found Plaintiff had tachycardia, hypertension, hypothyroidism, hyperlipidemia, diabetes mellitus, asthma, fatty liver/hepatomegaly, and splenomegaly, but that these conditions were non-severe, because they did not significantly limit Plaintiff's ability to work. The ALJ also noted Plaintiff alleged she has "tremors and back pain." (Tr. 20). But the ALJ found these conditions were not medically determinable impairments.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional restrictions:

- With ordinary supervision, she can remember instructions and apply commonsense understanding to carry them out.

4

Case 2:20-cv-00202-SKL   Document 27   Filed 03/21/22   Page 4 of 15   PageID #: 1339

- She can make related decisions to deal with problems involving several concrete variables in or from standardized situations.

- She can engage in a few routine and uninvolved tasks over and over again according to set procedures and sequence with little diversion or interruption in a setting that is goal-oriented (versus requiring that she maintain a specified pace consistently throughout a workday like off-bearing a conveyor belt).

- She can tolerate occasional superficial interaction with the public.

- She is able to engage appropriately with supervisors and co-workers for superficial and task-oriented interactions.

(Tr. 22). At step four, the ALJ found Plaintiff was not capable of performing her past relevant work. At step five, however, the ALJ found there were other jobs existing in substantial numbers in the national economy available to a person with Plaintiff's RFC, including laundry folder, cleaner, and inventory clerk (Tr. 26).

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between the alleged onset date of October 21, 2017, and the date of the decision, December 18, 2019 (Tr. 26).

## IV. ANALYSIS

Plaintiff argues the ALJ's decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings with a new administrative hearing before a different ALJ. She raises the following issues:

> 1. Whether the ALJ erred by using evidence previously ruled as unpersuasive, to discredit the claimant's testimony?
>
> 2. Whether the ALJ erroneously ruled that the claimant's residual functional capacity is supported by DDS [Disability Determination Services] opinions?

> 3. If so, do these errors singly or in combination rise to the level of arbitrary and capricious?

[Doc. 18 at Page ID # 1268].

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within the

Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B. Employer Questionnaire

Plaintiff challenges the ALJ's consideration of a questionnaire completed by Plaintiff's former employer on October 29, 2019 (Exhibit 20E, Tr. 325-29). The questionnaire was completed at the request of the ALJ. Regarding the completed questionnaire, the ALJ wrote:

> The claimant's recent employer stated the claimant completed 100 percent of her duties without special assistance in the same amount of time as others in similar positions, and regularly reported for work as scheduled. She was frequently absent from work. She did not work under special conditions and her work was satisfactory (Exhibit 20E). The regulations require the undersigned to consider all evidence, including statements from nonmedical sources. However, the undersigned is not required to articulate in the decision how such statement[s] were considered, even if such statements would be considered medical opinions if they came from a medical source. Nevertheless, the employer's opinion is

7

>   unpersuasive, as it is inconsistent to state she was frequently absent from work but regularly reported for work as scheduled.

(Tr. 23 (other internal citation omitted)).

Later in the opinion, when discussing Plaintiff's subjective complaints, the ALJ wrote:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the evidence as discussed above. The claimant alleges an inability to work because she needs constant supervision and reminders about what to do to move from task to task, due to depression/bipolar, anxiety, and PTSD. The issue appears to be motivation to complete tasks rather than a lack of understanding. She stated she needed a job that kept her occupied all the time, but that she cannot handle the stress of a job with time constraints or production quota. The employer's statement (Exhibit 20E), however, contradicts the claimant's statements that she needs constant supervision. The employer stated she performed her job duties satisfactorily in the expected timeframe.

(Tr. 24).

Plaintiff argues the ALJ erred by relying on evidence she had previously found was unreliable, and further, "the ALJ failed to state the reasons for the discrepancy between finding the evidence as unpersuasive when favorable to the claimant and using the same evidence to discredit the claimant's testimony later in the decision." [Doc. 18 at Page ID # 1269]. Plaintiff contends the ALJ acted arbitrarily by "choosing to apply only the information that was favorable to the Commissioner of Social Security and not information that was favorable to the claimant." [*Id.* at Page ID # 1271].

It is undisputed that ALJs are not required to articulate in the written decision how they consider evidence from nonmedical sources. *See* 20 C.F.R. § 404.1520c(d). Moreover, ALJs are never required to adopt any opinion in its entirety, even if it is a medical opinion that the ALJ has decided is entitled to great weight. *See Mendiola v. Soc. Sec. Admin.*, No. 3:15-cv-00995, 2016

8

WL 5800470, at *5 (M.D. Tenn. Sept. 30, 2016) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinion[] verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." (quoting *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015))); *see also Justice v. Comm'r Soc. Sec. Admin.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("The ALJ parsed the medical reports and made necessary decisions about which medical findings to credit, and which to reject. Contrary to Justice's contention, the ALJ had the authority to make these determinations.").

The ALJ is required to provide a reasoned explanation for her decision. When assessing RFC, the ALJ "must discuss the individual's ability to perform sustained work activities," and "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996). The Court finds the ALJ did just that. The ALJ explained the employer's questionnaire was inconsistent in one aspect—it states that Plaintiff was "frequently absent from work," on one page, but also states Plaintiff "regularly report[s] to work as scheduled (Tr. 328-29). Furthermore, one question asks the employer to indicate the types of special assistance Plaintiff requires. The employer did not indicate Plaintiff required frequent absences, irregular hours, or less hours (Tr. 328). The ALJ plainly had good reason to not accept the attendance aspect of the employer's questionnaire.

By contrast, nothing about the employer's questionnaire waivers on the point for which the ALJ later cited it—Plaintiff's ability to perform her job duties satisfactorily. Rather, the employer indicated Plaintiff completed all of the usual job duties required without special assistance, she completed her tasks in the same amount of time as other employees, she required no special assistance, she worked at 100% of the productivity rates of other employees, and her work was

9

satisfactory when compared to other employees (Tr. 328-29). The employer indicated Plaintiff did not need fewer or easier duties, lower production standards, extra help or extra supervision, special equipment or lower quality standards (Tr. 328). Plaintiff worked at this job for almost nine months, averaging just over 17 hours per week. This characterization, as the ALJ noted, differed from Plaintiff's own description of her limitations, namely that she needed constant supervision and reminders about what to do (Tr. 22). Notably, the decision reflects the ALJ did not fully credit the employer's questionnaire, as the ALJ limited Plaintiff to performing work that included "a few routine and uninvolved tasks over and over against according to set procedures and sequence," with "little diversion or interruption," and in a setting that does not require her to have more than occasional interaction with the public or to maintain a specific pace (Tr. 22). In other words, the ALJ accommodated significant limitations which Plaintiff's former employer reportedly did not believe were applicable to Plaintiff.

Moreover, as the Commissioner correctly points out, the ALJ's opinion about the inconsistency between the employer's questionnaire and Plaintiff's testimony was simply one point in a larger discussion of Plaintiff's subjective complaints when considered in the context of the overall record. The ALJ discussed how, despite Plaintiff's allegations, "exam notes generally show the claimant's mental status was within normal limits," and that her major mental health episodes occurred when she was not compliant with her medications (Tr. 24). After reviewing Plaintiff's medical records, the DDS psychological consultants found she did not have significant limitations in many areas of mental functioning, including in her ability to make simple work-related decisions, sustain an ordinary work routine without special supervision, perform work activities within a schedule, and maintain regular attendance (*see* Tr. 82-83). The DDS consultants found Plaintiff was moderately limited in some areas, including in responding to changes in the

10

workplace and in interacting with the public (*see* Tr. 82-83). The ALJ found the opinions of the DDS psychological consultants persuasive and accommodated Plaintiff's moderate mental restrictions in assessing Plaintiff's RFC (Tr. 24).

In sum, the Court finds the ALJ did not err in her consideration of the employer questionnaire. Perhaps the ALJ could have more clearly explained her consideration of the different aspects of the employer questionnaire, but it is readily apparent that the ALJ found the questionnaire was internally inconsistent regarding Plaintiff's absences and therefore not persuasive at least in that respect. Plaintiff has not shown that it was error for the ALJ to cite to a completely different and consistent statement from the employer's questionnaire when assessing Plaintiff's subjective complaints. Overall, the ALJ properly evaluated Plaintiff's reported symptoms and complaints in a manner consistent with relevant SSA policies and regulations, including SSR 16-3p, 2017 2017 WL 5180304 (SSA Oct. 25, 2017), and 20 C.F.R. § 404.1529. Such evaluations are properly entrusted to the ALJ, *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citation omitted), and Plaintiff has failed to show any harmful error in the ALJ's decision in this regard. *See Rottman v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 194 (6th Cir. 2020) ("Given the deferential substantial-evidence standard, '[c]laimants challenging the ALJ's credibility findings face an uphill battle.'" (quoting *Nettleman v. Comm'r of Soc. Sec.*, 725 F. App'x 358, 360 (6th Cir. 2018))).

In her reply, Plaintiff also briefly argues she "should not be penalized because [she] had the courage and determination to continue working despite [her] disabling condition," citing *Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990). *Wilcox* is readily distinguishable, as it involved a claimant with multiple sclerosis who was undisputedly disabled but was able to work

during periods of remission. The issue involved determining the proper onset date. The Sixth Circuit found the district court erred in determining a later onset date because the district court relied on activities the claimant performed during periods of remission. *Id.* at 277-78. "If the claimant's condition is 'not episodic,' there is no error in considering the claimant's work history." *See Fenner v. Comm'r of Soc. Sec.*, No. 3:12-cv-179, 2013 WL 2253573, at *6 (S.D. Ohio May 22, 2013), *report and recommendation adopted*, 2013 WL 3168645 (S.D. Ohio June 20, 2013); *see also Shaw v. Sec'y of Health & Human Servs.*, 978 F.2d 1259, 1992 WL 317152, at *1 (6th Cir. 1992) (*Wilcox* limited to episodic conditions, giving examples of multiple sclerosis and myasthenia gravis) (table decision). Plaintiff does not contend her conditions compare in any meaningful way to multiple sclerosis. Even if she did have intermittent periods when her symptoms worsened, she does not address how any periods of remission or worsening relate to the nine-month period when she was working part-time. Moreover, neither party cites to any aspect of the ALJ's decision indicating the ALJ relied on Plaintiff's part-time employment as a basis for denying Plaintiff's claim, although it is undisputed that a claimant's activities of daily living, which would include part-time work, are a proper consideration when determining a claimant's entitlement to disability benefits. *See* 20 C.F.R. § 404.1529(c); *see also Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) (holding that "the ALJ did not err by considering Miller's ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled"); *Mendiola v. Soc. Sec. Admin.*, No. 3:15-cv-00995, 2016 WL 5800470, at *4 (M.D. Tenn. Sept. 30, 2016) ("Moreover, an individual's work during a period of his alleged disability is a relevant and permissible consideration." (citation omitted)).

### C. DDS Opinions

Plaintiff also takes issue with the ALJ's consideration of the DDS opinions concerning

Plaintiff's physical abilities. The ALJ wrote:

> [Plaintiff] also alleges trouble due to plantar fasciitis and a sleep disorder. Records concerning the plantar fasciitis indicate the issue is mild and alleviated with comfort shoes and foot exercises. The claimant's sleep disorder is likewise characterized as mild. The claimant uses a CPAP machine and takes medication for sleep. She testified she usually sleeps eight to ten hours when she takes her medication. Thus, the residual functional capacity reasonably accommodates the claimant's impairments with a reduced exertional work level and limitations on work activities that might exacerbate her symptoms.
>
> As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows.
>
> The DDS found the claimant could perform a range of medium work with postural, environmental, and mental limitations (Exhibits 3A, and 6A). The undersigned finds the DDS opinion[s] persuasive, as [they are] consistent with the evidence and supported by objective observations in the treatment records.

(Tr. 24).

Plaintiff argues "the ALJ has made inconsistent findings about the same material issue." [Doc. 18 at Page ID # 1270]. She points out the DDS physicians found Plaintiff was capable of performing a range of work at the medium exertional level, while the ALJ assessed a range of work at the light exertional level. Plaintiff argues, "[t]o state that an RFC is consistent with DDS opinions, when one is *light work* and the others are *medium work* is clearly flawed and inconsistent reasoning." [*Id.*]. As with the employer questionnaire, Plaintiff contends the ALJ should have "include[d] reasoning for the discrepancies between the evidence of record and her findings and conclusions." [*Id.* at Page ID # 1270-71 (citing *Morehead Marine Servs., Inc. v. Washnock*, 135

F.3d 366, 375 (6th Cir. 1998))].

As the Commissioner points out, the ALJ assessed an exertional capacity that was less than the capacity found by the DDS physicians. Accordingly, any error in the ALJ's assessment of the DDS opinions benefitted Plaintiff and would therefore be harmless. *See Bradley v. Comm'r of Soc. Sec.*, No. 12-CV-10081, 2013 WL 1190259, at *11 (E.D. Mich. Jan. 8, 2013) ("Although Plaintiff complains that the ALJ reconfigured Dr. Tofaute's findings, I suggest that any changes were made in Plaintiff's favor and thus could only have been, at most, harmless error."), *report and recommendation adopted in pertinent part*, 2013 WL 1190239 (E.D. Mich. Mar. 22, 2013). Moreover, as mentioned above, the ALJ's assessment of Plaintiff's mental limitations was consistent with the limitations assessed by the DDS psychological consultants, and Plaintiff does not contend otherwise. Furthermore, the ALJ cited records reflecting that, during physical exams, Plaintiff had no reduced range or motion or difficulty ambulating (Tr. 20 (citing Exhibits 7F & 18F)).

Again, perhaps the ALJ could have better explained why he found Plaintiff to be slightly more physically limited than did the DDS physicians. However, the ALJ did detail why she found Plaintiff capable of light physical work, and Plaintiff does not cite to any information in her medical record or otherwise showing that this determination is not supported by substantial evidence. The opinions of the DDS physicians certainly support the ALJ's determination that Plaintiff was capable of working at some exertional level. Accordingly, the Court finds any error is harmless and not a proper basis for remanding Plaintiff's claim. As this Court and the Sixth Circuit have repeatedly held, where "remand would be an idle and useless formality," courts are not required to "covert judicial review of agency action into a ping-pong game." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759,

766 n.6 (1969) (plurality opinion)). Plaintiff's motion will be denied as it pertains to the ALJ's consideration of the DDS physicians' opinions.

V.    **CONCLUSION**

For the foregoing reasons, it is **ORDERED** that:

    (1) Plaintiff's motion for summary judgment [Doc. 17] is **DENIED**;

    (2) the Commissioner's motion for summary judgment [Doc. 23] is **GRANTED**; and

    (3) the Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:

                                                      s/ *Susan K. Lee*
                                                      SUSAN K. LEE
                                                      UNITED STATES MAGISTRATE JUDGE